IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JAMES GAIA | § | |
|     TDCJ-CID #1483407 | § | |
| | § | |
| v. | § | C.A. NO. C-09-212 |
| | § | |
| BRIAN SMITH, ET AL. | § | |

MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT T.K. REVIS' MOTION FOR SUMMARY JUDGMENT

In this § 1983 civil rights action, plaintiff James Gaia ("Gaia") claims that defendant T.K. Revis, a Corpus Christi peace officer, was deliberately indifferent to his serious medical needs because he failed to secure medical attention for plaintiff following his arrest and processing at the Nueces County Jail.

Officer Revis moves for summary judgment on the grounds of qualified immunity. (D.E. 82). Plaintiff has not filed a summary judgment response.

For the reasons stated herein, Officer Revis' summary judgment motion is granted, and plaintiff's claims against Officer Revis are dismissed with prejudice.

I.      Jurisdiction.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.  Upon consent of the parties (D.E.15, 25, 69), this case was assigned to a

United States magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 70).  See 28 U.S.C. § 636(c).

## II.    Background facts and plaintiff's allegations.

Plaintiff is a Texas state prisoner, currently confined at the Hughes Unit in Gatesville, Texas.  He filed this lawsuit on August 21, 2009, claiming that, following his arrest for aggravated assault on October 11, 2007, officers with the Corpus Christi Police Department (CCPD) used excessive force against him causing him injuries, and that he was then denied appropriate medical care, despite his requests to see a doctor.   (D.E. 1).  Plaintiff named as defendants: (1) Chief Brian Smith and (2) Officer Timothy K. Revis.  On September 1, 2009, plaintiff filed an amended complaint to name Corpus Christi Mayor Henry Garrett as an additional defendant.  (D.E. 11, 13).

Following a September 9, 2009 Spears[1] hearing, plaintiff's claims against defendants Brian Smith and Henry Garrett were dismissed.  (D.E. 17).  Plaintiff was granted leave to name  as defendants the two unidentified John Doe officers who he claimed used excessive force against him, and the City of Corpus Christi for failure to train its officers properly.  Id. In addition, plaintiff's claim of deliberate indifference to his serious medical needs against Officer Revis was retained.  Id.

On February 2, 2010, Officer Revis filed his first motion for summary judgment, arguing that certain statements should be deemed admitted against plaintiff, such that

[1]Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

summary judgment was appropriate.  (D.E. 40).  Plaintiff filed a response in opposition, (D.E. 58), and on June 23, 2010, Officer Revis' first motion for summary judgment was denied.  (D.E. 74).

On June 22, 2010, plaintiff was granted leave to identify the John Doe defendants as Jesus Gomez and Alberto Gonzalez, (D.E. 72, 73), and on July 14, 2010, he was granted leave to amend his complaint to reflect that he was seeking $150,000.00 in damages.  (D.E. 80, 81).

On July 15, 2010, Officer Revis filed the instant, second motion for summary judgment.  (D.E. 82).

III.    **Summary judgment evidence.**

In support of his motion for summary judgment, Officer Revis offers:

Ex. 1:  Affidavit of T.K. Revis with Attachment A, Miranda warning signed by plaintiff, and Attachment B, a DVD recording of the October 12, 2007, videotaped interview following plaintiff's arrest; and

Ex. 2:  Plaintiff's medical records from the Nueces County Jail in October, 2007. [2]

The following facts are not in dispute.

On October 11, 2007, CCPD police officer M. Olivares responded to a disturbance at the 2100 block of Morgan Avenue in Corpus Christi.  (DSJ Ex. 2 at ¶ 1.).  Upon his arrival, he found the victim, Rudy Garcia, laying on the street, unconscious, and bleeding

---

[2] Reference to Officer Revis' summary judgment motion (D.E. 86), is to "DSJ" followed by an exhibit number, and page reference if appropriate, or citation to the DVD.

from the head.  Id.  Witnesses identified plaintiff as the assailant, and he was arrested.  ¶ 2 and ¶ 3.

At 10:30 p.m. on the night of his arrest, plaintiff was evaluated by a nurse to determine if he could be admitted to the jail.  (DSJ Ex. 2 at 10-11).  The nurse noted that plaintiff was conscious, he was able to walk and stand, and he was not drowsy or sluggish. Id. at 10.  He was not bleeding, but he complained of pain in both eyes.  Id.  The nurse noted that plaintiff was anxious, tearful, and agitated, and that his speech was loud and disorganized.  Id.  Upon examination, the nurse noted that plaintiff's right cheek had slight swelling, and his left eye had minimal swelling.  Id.

On October 12, 2007, at approximately 10:30 a.m., plaintiff was interviewed by Officer Revis and his partner concerning the aggravated assault for which plaintiff had been arrested the night before.  (DSJ Ex. 1, Attachment A, DVD-recording at 10:33:30 – 10:40:25).  Officer Revis introduced himself.  Id.  Plaintiff was given a written copy of the Miranda rights which Officer Revis read to plaintiff and plaintiff initialed his understanding. Id.  (See also DSJ, Ex. 1, Attachment A).  Officer Revis related that the victim was "not doing really well."  (DVD at 10:36:30).  Officer Revis asked plaintiff what he could tell him about the night before, what could he remember.  Id.  Plaintiff replied that the only thing he could remember was that somebody "put his hands on me," and now his ribs hurt, and he told someone at the front desk that he thinks his ribs are cracked.  (DVD at 10:36:52).  In addition, plaintiff stated that his eyes were swollen, he felt as if someone had hit him, and his head hurt.  Id.  He remembered walking around, then getting hit, and then being arrested.  Id.

4

He admitted to smoking marijuana in the morning, having a few drinks of vodka, and a couple of 24-ounce beers.  Id.  The interview concluded shortly thereafter.  Id.

At 1:30 p.m. on October 12, 2007, plaintiff underwent medical screening.  (DSJ Ex. 2 at 3-7).  Plaintiff told the nurse that he had left rib pain from being kicked in the ribs about a month ago.  Id. at 3.  Plaintiff also stated that he was depressed.  Id.  He was advised to submit a sick call request to be treated for his rib pain.  Id.

On October 15, 2007, plaintiff was seen By Dr. Imam.  (DSJ Ex. 2 at 12).  Plaintiff stated he was depressed, but that he had no mental problem.  Id.  He admitted to use of THC, alcohol, and cocaine.  Id.  He denied hallucinations or suicidal ideation.  Id.  Dr. Imam's recommendation was that plaintiff needed counseling for drugs.   Id.

## IV.      Summary judgment standard.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate

5

the credibility of witnesses.  Id.  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense.  See Milchalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005).  When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law.  Id.  Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct.  Bazen v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001).

6

## V.    Discussion.

Officer Revis moves for summary judgment on the grounds of qualified immunity. He argues that there is no genuine issue of a material fact that he did not know, nor should have known, that plaintiff needed medical attention on the night of his arrest or following the interview.

### A.    Qualified immunity.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. ____, 129 S. Ct. 808, 815 (January 21, 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).  To discharge this burden, the plaintiff must satisfy a two-prong test."  Atteberry v .Nocana Gen. Hosp., 430 F.3d 245, 251-52 (5th Cir. 2005).  First he must claim that the defendants committed a constitutional violation under current law.  Id. (citation omitted).  Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.  Id.

While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer

7

mandatory.  Pearson, 555 U.S. at ___, 129 S. Ct. at 818 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

**(1)    Constitutional violation.**

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official(s) acted with deliberate indifference to serious medical needs. Wilson v. Seiter, 501 U.S. 294, 303.(1991);  Estelle v. Gamble, 429 U.S. 97, 105 (1976); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).   Deliberate indifference encompasses more than mere negligence on the part of prison officials.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  It requires that prison officials be both aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act.  Farmer, 511 U.S. at 837. Furthermore, negligent medical care does not constitute a valid § 1983 claim.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).  See also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993) ("[i]t is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim").  As long as jail personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights.  Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982).

Plaintiff claims that he was visibly injured, in pain, and that he requested medical attention.  However, a review of the taped interview reveals that plaintiff *did not* request medical attention from Officer Revis during the taped interview.  (DSJ Ex. 1, attachment B).

The videotape of the interview is dispositive of what happened during the interview.  <u>Scott</u>

<u>v. Harris</u>, 550 U.S. 372 (2007).  In addition, in his affidavit, Officer Revis states:

> During the interview, James Gaia never said he needed medical care or requested medical attention.  He did not appear to me to have any serious injuries.  James Gaia had been medically cleared at the time of the booking.  In all my dealing with James Gaia, I acted in good faith within the course and scope of my duties as a police officer.  ...

(DSJ, Ex. 1, Revis Aff't at ¶ 4).

Plaintiff offers no evidence to counter Officer Revis' testimony.  Moreover, the

videotape fails to reveal that plaintiff had any serious injury.  Plaintiff is not bleeding or

moaning.  He is coherent and able to converse with Officer Revis.  He does not ask for

medical attention or complain that he is in pain.

Additional evidence demonstrating that Officer Revis did not know plaintiff was

allegedly injured was the fact that a registered nurse saw plaintiff when he got to the jail and

she cleared him for acceptance by the jail.  (DSJ Ex. 2 at 10).  The acceptance form

specifically provides that "no inmate symptomatic of severe illness, injury or mental rx will

be accepted until seen by a physician regardless of the agency attempting to admit the

patient/inmate to the jail."  <u>Id.</u>  Thus, the trained nurse who examined plaintiff following his

arrest did not find any injury or other symptoms to delay his acceptance to the jail.  <u>Id.</u>  If a

trained nurse did not observe any injury, it follows that Officer Revis, who is not trained in

the medical field, would not have observed  a medical issue that the nurse overlooked.

Finally, the uncontested evidence shows that, when plaintiff was seen at medical screening  on October 12, 2007, after his interview with Officer Revis, plaintiff reported rib pain due to being kicked in the ribs about a month prior.  (DSJ Ex. 2 at 3).  In addition, plaintiff related that he was depressed, and he was then seen by Dr. Imam for depression. (DSJ Ex. C at 3, 12).  That is, no medical provider who treated plaintiff found that he was injured or needed special medical attention. Thus, because plaintiff never complained of a serious injury or pain to any medical personnel, let alone to Officer Revis, there is no genuine dispute that Officer Revis did not know, nor should he have know, that plaintiff was injured. Thus, plaintiff fails to establish that Officer Revis was aware of a serious medical need and ignored that need, such that he fails to state a claim of deliberate indifference against him.

**(2)    Objective reasonableness.**

Because the uncontested facts establish that Officer Revis did not know, nor did he have reason to know, that plaintiff allegedly needed medical attention, the Court need not examine whether Officer Revis' actions were reasonable.  See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).

**VI.    Conclusion.**

For the reasons stated herein, Officer Revis' motion for summary judgment (D.E. 82)

is GRANTED.  Plaintiff's claims against this defendant are dismissed with prejudice.

ORDERED this 16th day of November, 2010.

_____

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

11